

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 6 2018

Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00am on 7-26-18

Susan Carlson

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 95083-1 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| EDGAR DENNIS III, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed JUL 2 6 2018 |

JOHNSON, J.—This case concerns the statutory interpretation of the portion of RCW 9.41.040 dealing with requirements for restoration of firearm rights. The statute allows an offender to petition for restoration of firearm rights "after five or more consecutive years in the community without being convicted ... or currently charged with any felony, gross misdemeanor, or misdemeanor crimes." RCW 9.41.040(4)(a)(ii)(A). At issue is whether this required five-year period must immediately precede the petition for restoration or if any conviction-free five-year period suffices. We reverse the Court of Appeals and hold that any five-year

conviction-free period satisfies this requirement for eligibility to petition for restoration of firearm rights.

## FACTS

In 1991, Edgar Dennis III was convicted of second degree robbery, third degree assault, and two counts of felony violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. His convictions disqualified him from possessing a firearm. Dennis was also convicted of third degree assault in 1998. After serving his sentence, he lived in the community for over 15 years without a conviction. Then, in 2014, he was convicted of first degree negligent driving, a misdemeanor.

In April 2016, Dennis petitioned the court for restoration of his firearm rights. He did not disclose his 2014 conviction. The State objected to his petition and informed the court of his 2014 conviction, arguing the statutory requirement of a five-year conviction-free period must immediately precede a petition for restoration. The superior court denied the petition. In a motion for reconsideration, Dennis argued that the trial court had erred in not following the Division Two of the Court of Appeals' interpretation of the statute that any conviction-free five-year period satisfies the requirement. *Payseno v. Kitsap County,* 186 Wn. App. 465, 473, 346 P.3d 784 (2015). The superior court denied the motion. Dennis appealed to Division One and the court affirmed, holding that the five-year period must

2

immediately precede a petition for restoration. *State v. Dennis*, 200 Wn. App. 654, 666, 402 P.3d 943 (2017). We granted review to resolve this split between Divisions One and Two. *State v. Dennis*, 189 Wn.2d 1031, 407 P.3d 1146 (2018).

## ISSUE

Whether RCW 9.41.040(4)(a)(ii)(A) requires a petitioner be conviction-free for five consecutive years or more immediately preceding the filing of the petition.

## ANALYSIS

RCW 9.41.040(4)(a)(ii)(A) allows a person who has lost his or her firearm rights to petition the court for restoration of those rights. Once all the statutory requirements for restoration have been satisfied, a superior court's role in approving the petition is purely ministerial; the court has no discretion. *State v. Swanson*, 116 Wn. App. 67, 78, 65 P.3d 343 (2003). The statute states in relevant part:

> An individual may petition a court of record to have his or her right to possess a firearm restored . . . [i]f the conviction or finding of not guilty by reason of insanity was for a felony offense, *after five or more consecutive years in the community without being convicted or found not guilty by reason of insanity or currently charged with any felony, gross misdemeanor, or misdemeanor crimes*, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525.

RCW 9.41.040(4)(b), (4)(a)(ii)(A) (emphasis added).

We review issues of statutory interpretation de novo. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). The purpose of statutory interpretation is

3

"'to determine and give effect to the intent of the legislature.'" *Evans*, 177 Wn.2d at 192 (quoting *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). "When we interpret a criminal statute, we give it a literal and strict interpretation." *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (citing *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)). We derive the legislative intent of a statute solely from the plain language by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *Evans*, 177 Wn.2d at 192 (citing *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).

If, after this inquiry, there is more than one reasonable interpretation of the plain language, then a statute is ambiguous and we may rely on principles of statutory construction, legislative history, and relevant case law to discern legislative intent. *Ervin*, 169 Wn.2d at 820 (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). A statute is "not ambiguous simply because different interpretations are conceivable." *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001) (citing *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999)).

Both parties argue the provision is unambiguous and should be interpreted their way. Dennis argues that the State's interpretation requires reading "immediately preceding" into the statute. It is a well-established principle of

4

statutory interpretation that we may not add words "to an unambiguous statute when the legislature has chosen not to include that language." *Delgado*, 148 Wn.2d at 727. No language in the statute states the five-year period must immediately precede the petition. If the legislature wanted the five-year period to immediately precede a petition for restoration, it would have said so; we may not read language into a statute that is not there.

In response, the State argues that the language "five *or more* consecutive years" has no effect unless the five years must immediately precede the petition. Another tenet of statutory interpretation is that we must interpret a statute so as to "render no portion meaningless or superfluous." *Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010). Per this tenet, the State argues that if the legislature had intended any five-year period to qualify, it would have said "five-year period" without including the "or more" language. As an example, the State points to the washout provision of the Sentencing Reform Act of 1981, chapter 9.94A RCW, that says a class C felony washes out if "the offender spent five years in the community without committing any crime that subsequently results in a conviction" since the last date of release from confinement. RCW 9.94A.525(2)(d). The State argues that because of the way the legislature wrote the washout provision, the legislature knew how to establish that any five-year period would

suffice, but the legislature instead chose to add the words "or more" to signal the five years must immediately precede the petition.

The washout provision is somewhat different from the restoration provision in that an offender's conviction automatically washes out after the required time period, whereas the restoration provision requires affirmative action in the form of a petition from an eligible offender to trigger restoration of rights. Given this procedural distinction, the legislature may have understandably used different language in the restoration provision to put offenders on notice about when they could petition for restoration.

The restoration provision cites the washout provision in the last part of the statute: "if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525." RCW 9.41.040(4)(a)(ii)(A). Dennis argues this reference to the washout provision is crucial to understanding the legislature's inclusion of the words "or more." Dennis's argument situates the language at issue within the context of the restoration provision as a whole. For a class C felony, the washout provision is five years, so an offender does not need to wait any more than the five years already required by the restoration provision. RCW 9.94A.525(2)(c). The washout period for a class B felony is 10 years, so depending on his or her criminal history, not every offender will be able to petition five years after his or her last

conviction. RCW 9.94A.525(2)(b). Thus, the "or more" language lets those petitioners who must wait more than five years know that they can still petition once any prior convictions that would affect their offender scores have washed out. Class A felonies and felony sex offenses never wash out, so offenders who have committed those crimes will never be able to petition for restoration of their firearm rights. RCW 9.94A.525(2)(a).

Although not necessary for our interpretation of the restoration provision's plain language, a review of the bill reports supports Dennis's argument. The final bill report states that an offender may petition for restoration of firearm rights "after five years in the community without a conviction or current charge for any crime," but "the person must also have passed the 'washout' period under the Sentencing Reform Act before he or she may petition the court." FINAL B. REP. ON SUBSTITUTE H.B. 2420, at 2, 54th Leg., Reg. Sess. (Wash. 1996). Thus, the legislature seemed focused on offenders' prior convictions washing out before they could become eligible to petition for restoration of firearm rights. The "or more" language reflects the legislature's concern for those offenders who may need to wait more than five years to petition while their prior convictions wash out. This interpretation is consistent with our opinion in *Rivard*, where we held that "prior felony convictions" refers only to felonies occurring prior to the offense that causes an offender's loss of firearm rights. *Rivard*, 168 Wn.2d at 784 ("Although

[an offender] had remained crime-free for the requisite 5 years for the purpose of his disabling felony, a prior conviction still included in his offender score delays his eligibility.").

The parties also dispute the significance of the language that a petitioner may not petition if he or she is "currently charged with any felony, gross misdemeanor, or misdemeanor crimes." RCW 9.41.040(4)(a)(ii)(A). "[S]tatutes should receive a sensible construction to effect the legislative intent and, if possible, to avoid unjust and absurd consequences." *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983) (citing *Crown Zellerbach Corp. v. Dep't of Labor & Indus.*, 98 Wn.2d 102, 653 P.2d 626 (1982)). The State points out that the statute does not limit pending charges only to those crimes that would result in the renewed loss of firearm rights but instead prevents restoration when any charges are pending. Thus, the State argues the only logical reading of the statute is that the legislature did not want courts to restore firearm rights while any new criminal charges were pending.

Dennis argues that the prohibition on petitioning while charges are pending makes sense because in any given case, charges may be amended upward, even from a misdemeanor charge, meaning someone facing charges could possibly petition for restoration only to be disqualified upon conviction for a crime that results in the loss of firearm rights. If an offender who is otherwise eligible to

petition for restoration is facing current misdemeanor charges, one of three things may happen. First, the charge could be amended upward to a felony. If convicted, even if the offender had already satisfied the five-year requirement, the felony conviction would start the clock over and the offender would not be eligible to petition. Second, as in Dennis's situation, the charge could result in a misdemeanor conviction. Because he has already satisfied the five-year requirement, his misdemeanor conviction does not prevent him from successfully petitioning. Third, the charge could be dismissed, which the State seems to agree would not affect eligibility to petition.

The State argues, and the Court of Appeals below agreed, that Dennis's interpretation would lead to absurd results because under his interpretation, an offender cannot petition while a misdemeanor charge is pending, but the moment he or she is convicted of that misdemeanor he or she can successfully petition for restoration of firearm rights. We disagree—it is not an absurd result to read and apply a statute as expressly written; the provision's plain language states that an offender may not petition while a charge is pending, nothing more.

The State further argues that Dennis's interpretation would lead to absurd results because a person could be convicted of hundreds of misdemeanors after a five-year conviction-free period and still recover his or her firearm rights. This ominous prediction does not seem to be an absurd result because the legislature has

created a specific list of crimes that result in the loss of firearms, and Dennis's negligent driving conviction is not on that list.[1] Whether it is 1 misdemeanor conviction, a dozen, or 100, the statutory language does not change. Dennis has lived in the community without a conviction for over a decade and has satisfied the five-year conviction-free period; a simple misdemeanor conviction does not prevent restoration of firearm rights to an offender who has otherwise met the statutory requirements.

Dennis points out that had he petitioned once the five-year period had run, his rights would have been restored and his later misdemeanor conviction would not disqualify him from possessing a firearm. He argues that the State's interpretation leads to absurd results because it arbitrarily rewards the petitioner who rushes into court as soon as five years have passed. Given that a court's role in the restoration process is purely ministerial, the precipitating event for eligibility for restoration is when the statutory requirements are met, not when the petition is

---

[1] Crimes that result in the loss of firearm rights—those crimes enumerated in RCW 9.41.040(1) and (2)—are different from those crimes that prevent courts from restoring firearm rights—any conviction for any felony, gross misdemeanor, or misdemeanor. A conviction for any felony, gross misdemeanor, or misdemeanor is enough to interrupt the five-year conviction-free period required for restoration. But the issue here is not whether Dennis's five-year conviction-free period was interrupted by his misdemeanor conviction, but whether the timing of his five-year period matters for restoration.

filed. The only discretion the restoration provision contemplates is the petitioner's discretion to decide when to petition.

The language of the restoration provision is clear: an offender having previously been convicted of a class C felony needs a period of five years without any convictions before he or she can petition for restoration of rights; this five-year period need not immediately precede the petition. If the legislature intended the five-year period to immediately precede a petition for restoration, it could have said so, but where the legislature omits language from a statute, we may not read language into the statute. *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002) (citing *Jenkins v. Bellingham Mun. Court*, 95 Wn.2d 574, 579, 627 P.2d 1316 (1981)).

We reverse the Court of Appeals and hold that in this case, involving a prior class C conviction, any conviction-free period of five or more consecutive years satisfies the requirement of the restoration provision under RCW 9.41.040(4)(a)(ii)(A). We remand to the trial court with instructions to grant

Dennis's petition for restoration of his firearm rights.[2]

WE CONCUR:

Wiggins, J.

Madsen, J.

Stephens, J.

---

[2] Dennis also puts forth two constitutional arguments which were not raised at the Court of Appeals. Dennis argues that Division One's interpretation supports an arbitrary application of the restoration provision that renders the statute unconstitutional as applied to him. He also argues that the statute violates the equal protection clause. Given our resolution of the statutory interpretation, we decline to decide these issues.

No. 95083-1

GONZÁLEZ, J. (dissenting)—RCW 9.41.040(4)(a)(ii)(A) unambiguously sets forth the prerequisites for the restoration of one's firearm rights. One of those prerequisites is that the petitioner must be crime-free for at least five years at the time of petition. The majority concludes that a person previously convicted of a felony may successfully petition for the restoration of their firearm rights, even if they have had a new conviction in the last five years, so long as they were crime-free for five years at some point in the past. This reading of the statute is not what the people intended in proposing, or the legislature intended in passing, the Hard Time for Armed Crime Act, LAWS OF 1995, ch. 129. Therefore, I respectfully dissent.

In Washington, a person convicted of a felony loses the right to possess firearms. RCW 9.41.040. However, with some exceptions, the right can be restored. RCW 9.41.040(4). In relevant part, the statute sets forth the criteria as follows:

> An individual may petition a court of record to have his or her right to possess a firearm restored . . .
> [i]f the conviction or finding of not guilty by reason of insanity was for a felony offense, after five or more consecutive years in the community *without being convicted* or found not guilty by reason of insanity or currently charged *with any felony, gross misdemeanor, or misdemeanor crimes*, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525.

RCW 9.41.040(4)(b), (4)(a)(ii)(A) (emphasis added). Once the person satisfies the statutory criteria, the trial court acts in a ministerial capacity and without discretion in approving the petition. *State v. Swanson*, 116 Wn. App. 67, 78, 65 P.3d 343 (2003).

I agree with the majority that this statute is unambiguous. But I disagree with the interpretation the majority derives from this unambiguous statute. When construing an unambiguous statute, "we will give effect to the plain meaning of the statutory language." *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011); *see also State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983); *State v. Larson*, 184 Wn.2d 843, 851, 365 P.3d 740 (2015).

Here, Dennis was convicted of assault in the third degree, robbery in the second degree, and two violations of the Uniform Controlled Substances Act, ch. 69.50 RCW (none of which permanently disqualify him). Because of these convictions, Dennis lost his right to possess firearms. He had the opportunity to restore that right. Dennis remained crime-free for 16 years following his last

2

conviction in 1998, but, in 2014, two years before petitioning for the restoration of his firearm rights, Dennis was convicted of first degree negligent driving—a misdemeanor.

Under the majority's interpretation, Dennis would be prohibited from petitioning to restore his firearm rights while charged, but not after conviction because first degree negligent driving is a misdemeanor. Majority at 9 ("[T]he provision's plain language states that an offender may not petition while a charge is pending, nothing more."); *id.* at 10 ("[A] simple misdemeanor conviction does not prevent restoration of firearm rights."). Yet, the statute clearly dictates that a person may petition

> after five or more consecutive years in the community *without* [(1)] *being convicted*[,] or [(2)] found not guilty by reason of insanity[,] or [(3)] currently charged with *any felony, gross misdemeanor, or misdemeanor crimes*.

RCW 9.41.040(4)(ii)(A) (emphasis added). A person whose firearm rights have been lost because of a felony conviction and who is later convicted for a crime that itself typically does not result in the loss of firearm rights (for example, misdemeanor negligent driving) remains barred from restoring their right to possess a firearm. The new conviction restarts the clock.

This was clearly intended, considering the provision's context. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 440, 395 P.3d 1031 (2017) ("Plain language analysis also looks to amendments to the statute's

3

language over time." (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002))). The restoration provision at issue was included in the Hard Time for Armed Crime Act, which enhanced sentencing to "sufficiently stigmatize the carrying and use of deadly weapons by criminals." LAWS OF 1995, ch. 129, § 1(c). Before 1995, the *only* people eligible for restoration were those who lost their rights to possess firearms because they were convicted of three or more DWIs (driving while intoxicated) in five years, and those who had been involuntarily committed. LAWS OF 1994, 1st Spec. Sess., ch. 7, § 404(2), (3), (4)(a)(i). In addition, before 1995, the law did "not provide similar procedures for the other classes of people who are subject to unlawful possession of a firearm." H.B. REP. ON INITIATIVE 159, at 2, 54th Leg., Reg. Sess. (Wash. 1995). Thus, it is highly unlikely, given this history, that the people intended to prevent someone from possessing a firearm while a misdemeanor charge was pending, but then allow that the same person to obtain a firearm following a conviction.

The majority spends a considerable amount of time parsing out the statutory meaning of "or more." The phrase "or more" simply denotes that an offender must be *crime-free* for a minimum of five years in order to petition for restoration. RCW 9.41.040(4) requires no involvement in criminal activity at for least five years, while recognizing the petitioner may have more than five crime-free years at

4

the time of petition. Dennis remained crime-free for at least five years before being convicted again in 2014. Once Dennis was charged and convicted, the clock restarted. Dennis is eligible to petition for the restoration of his firearm rights five years after his *2014 conviction*, which, if he remains crime-free, is next year. RCW 9.41.040(4) places the responsibility on the defendant to petition for the restoration of their firearm rights. Here, Dennis' opportunity to restore his right lapsed because of his own criminal behavior.

Because the majority would restore Dennis' firearm rights sooner than the people intended, I respectfully dissent.

González, J.

Fairhurst, C.J.

Su, J.